Archie VAN SICKLE, Appellant,

v.

Margaret STROUD, Appellee.

No. 17220.

Court of Civil Appeals of Texas,
Fort Worth.

May 7, 1971.

Boyd, Veigel & Gay, and William M.
Boyd, McKinney, for appellant.

Garrett, Settle & Callaway, and Rufus S.
Garrett, Fort Worth, for appellee.

OPINION

LANGDON, Justice.

This suit is in the nature of a will contest, i.e., the contest of the probate of an alleged codicil to the will of Mrs. Fanny M. Manners, whose will had previously been admitted to probate. Application to probate the codicil was refused in the Pro-

bate Court. On appeal to the District Court a jury requested by the proponent of the codicil was duly empaneled for trial. When the proponent concluded the presentation of his evidence the contestant moved for a directed verdict. The trial judge in granting the motion withdrew the case from the jury and rendered judgment denying probate of the codicil. This appeal is from that judgment.

We affirm.

Archie Van Sickle, the proponent, will be referred to as the appellant, and Margaret Stroud, the contestant, as the appellee.

By his first point the appellant claims the court erred in putting him to trial without an attorney only four days after the Court granted the motion of his attorney to withdraw from the case.

The will of Fanny M. Manners was filed on August 12, 1969, and admitted to probate on August 25, 1969. Appellee, the independent executrix of Mrs. Manners' estate, in order to obtain possession of a farm, filed a forcible entry and detainer suit against appellant. The latter appealed the decision of the Justice Court to the County Court at Law. The decision in the County Court at Law was postponed because of appellant's announcement that he held a purported codicil, subject of this appeal, which was filed for probate on January 23, 1970, pertaining to the farm above referred to.

Attorneys for the appellee set the hearing on the purported codicil in the Probate Court for March 24, 1970. During these proceedings the appellant was ably represented by attorneys who urged a motion for continuance. The matter was continued until April 7, 1970, at which time the application for probate of the codicil was denied. An appeal from the order of the Probate Court denying probate was filed. The attorneys in the preceding matter withdrew on June 10, 1970.

Although the case now on appeal was set for trial for September 7, 1970, in the trial court, the appellant did not employ new counsel until shortly before trial date. The new attorneys, Cribbs and McFarland, filed a motion for continuance, which was sustained. The trial was reset for October 19, 1970.

There is no evidence when appellant was notified by his attorneys, Cribbs and McFarland, that they intended to withdraw. It is presumed that appellant was notified prior to October 9, 1970, the date the motion to withdraw was heard, and that counsel did not wait until the date the order was signed to give such notice. At the docket call on October 15, 1970, appellant failed to appear, and appellee announced "Ready" and informed appellant by letter that this case was first on the docket for October 19, 1970. Appellant did not appear when the case was called for trial on October 19, 1970. It was necessary for the court to communicate with appellant at his place of employment to notify him that it was necessary for him to be in court. Appellant did not appear in court until approximately 12:15 P.M. on October 19, 1970, and the trial commenced at 2:00 P.M. At appellant's request, it was recessed until 9:00 o'clock A.M. on October 20, 1970.

Appellant's motion for a new trial, prepared and presented on his behalf by his attorneys made no complaint of the absence of counsel at trial. Neither at the hearing of this motion nor at the trial was there any attempt made to show why appellant failed to make arrangements for counsel. The record is silent on the question of whether counsel withdrew in October without fault on appellant's part, or how long before October 9, 1970, counsel notified appellant of their intent to withdraw. Counts v. Counts, 358 S.W.2d 192, 200 (Austin, Tex.Civ.App., 1962, appeal dism., 373 U.S. 543, 83 S.Ct. 1549, 10 L. Ed.2d 688); Strode v. Silverman, 217 S. W.2d 454 (Waco, Tex.Civ.App., 1949, error ref.).

The record reflects that the appellant is now represented by his fourth set of attorneys in this same cause. This fact would indicate some experience on his part in obtaining counsel.

█ The cases holding that absence of counsel is grounds for a continuance uniformly require a showing of diligence and lack of fault by the complaining party. We find no such showing in the case at bar. Farmers' Gas Co. v. Calame, 262 S. W. 546 (Waco, Tex.Civ.App., 1924, no writ hist.); Counts v. Counts, 358 S.W.2d 192, supra; Strode v. Silverman, 217 S.W.2d 454, supra; and Davis v. Cox, 4 S.W.2d 1008, 1012 (Amarillo, Tex.Civ.App., 1928, writ dism.). In Davis the court succinctly states: "Litigants must exercise diligence in respect to pending litigation, and the plaintiff is charged with knowledge of all proceedings in the case, * * *.

"Discharging their attorneys, under the circumstances stated in the petition, shows negligence. The rule is that a litigant 'must, unless he means to try his own case, retain an attorney practicing in the particular court, and see that the attorney understands and accepts the retainer, and in case his counsel dies or withdraws, or is discharged from the case, he must promptly engage another, unless excused therefrom by ignorance of the facts requiring it, in which case he must act promptly on discovery of the facts.' 34 C.J. p. 306; Barber v. Sager, 141 Ark. 1, 216 S.W. 36." In the case at bar the appellant was not prompt and cannot be excused by ignorance of the facts.

In American Hydrocarbon Corporation v. Hickman, 393 S.W.2d 197, 198, 199 (Texarkana, Tex.Civ.App., 1965, no writ hist.), the court states: "The controlling rule is stated in 41 Tex.Jur.2d 360, sec. 154, to-wit:

" 'A party to a civil case seeking relief from a judgment rendered in the absence of his counsel must show in his motion papers, by averments of fact as distinguished from conclusions of law, not only that he was prevented from presenting his case at a proper time through some cause unmixed with negligence on his part, but also that he has a meritorious case.' " The lack of attorneys was not stated as a ground in appellant's motion for new trial. No written motion for continuance was filed on October 19, 1970.

█ Appellant offered no evidence either at the trial or the hearing of his motion for new trial, at which time he was represented by an attorney, explaining the circumstances surrounding the withdrawal of his attorneys, Mr. Lattimore and Mr. Karpenko, the reason for the delay in employing an attorney during the summer of 1970, or the reason for the withdrawal of Mr. Cribbs. In absence of any motion or evidence on such points, the action of the trial court must be presumed correct.

Appellant's first point is overruled.

Appellant by his points two through eight, both inclusive, contends that the trial court erred in taking the case from the jury and rendering judgment against him because (2) the testimony of Stella Thomas was of probative force, (3) such testimony raised a fact issue, (4) the motion for a directed verdict admitted the truth of the material evidence offered by the proponent, including the testimony of Stella Thomas, (5) although Stella Thomas was not a subscribing witness to the codicil, her testimony was admissible to prove its due execution within the requirements of the probate code, (6) the court's judgment is not based upon undisputed evidence since the finding that the testatrix did not sign the codicil is in conflict with Stella Thomas' testimony that she saw the testatrix sign it, (7) the above testimony of Stella Thomas raised the issue that the testatrix did execute the codicil, and (8) the trial judge had no authority to pass upon the weight of such testimony.

Appellant offered the testimony of three witnesses at the trial. The testimony of Mrs. Henderson does not touch on the purported codicil or its execution.

No witness identified the "document," "will," "this thing," or "this paper here" as the purported codicil of which probate was sought. The record is silent as to the identity of the document referred to in the testimony of appellant and his sister, Mrs. Thomas. The purported codicil was offered in evidence on the first day of trial without any supporting testimony and was not admitted. It was never offered again nor was there any attempt thereafter to show that it was a document executed by Mrs. Manners.

The testimony of Mrs. Thomas does not sufficiently identify the "will" or "paper" referred to and will not support the introduction of the purported codicil into evidence. At the hearing on appellant's motion for new trial, appellant's witness, "the truly Bessie Jones", testified that the decedent had more than one set of papers that were being executed, "It seemed she had three or four sets of papers". There is no reference in Mrs. Thomas' testimony or that of any other witness to the question of whether Mrs. Manners signed the codicil in question and if so whether she signed in the presence of any witness or whether the witnesses signed in her presence.

The testimony indicates that some document was signed by Mrs. Manners, by Mr. Finn and two other witnesses and that Mrs. Thomas saw each of them sign it. There is absolutely no proof that the requirements of execution and attestation set out in Sec. 59 of the Texas Probate Code, V.A.T.S. were complied with in the execution of any document. Certainly there is no such proof relating to the codicil in question.

Section 59 of the Probate Code provides, in part: "Every last will and testament, except where otherwise provided by law, shall be in writing and signed by the testa-tor in person or by another person for him by his direction and in his presence, and shall, if not wholly in the handwriting of the testator, be attested by two or more credible witnesses above the age of fourteen years who shall subscribe their names thereto in their own handwriting in the presence of the testator."

In the case of Jones v. Steinle, 15 S.W. 2d 164, 165 (Austin, Tex.Civ.App., 1929, error ref.), the established rule was stated as follows: "Articles 3344 and 3348, R.S. 1925, place the burden upon the proponent to show that a will offered for probate was executed 'with the formalities and solemnities and under the circumstances required by law,' which includes establishing whether the will was subscribed to by the attesting witnesses in the presence of the testator."

The court held that the proponent did not make such proof because of his failure to call or account for the absence of one of the attending witnesses together with the absence of proof that the witnesses subscribed their names in the presence of the testatrix.

The same rule applies to the execution of a codicil and the elements required by the above authorities are wholly absent from the record in the present case.

The court further held in Jones v. Steinle, 15 S.W.2d 164, supra, that: "The failure of proponent of a will to produce or account for such other attesting witnesses raises a presumption that they would, if produced, testify that the will was not signed by them in the presence of the testator or testatrix."

The evidence offered by proponent at the trial wholly fails to account for the absence of the attesting witnesses. "Mr. Finn" is the only one identified by name. The record is silent as to the age or identity of the "two colored women" who purportedly signed some document on the occasion in question.

In Wilson v. Paulus, 15 S.W.2d 571, 573 (Tex.Com.App., 1929), the court similarly held a will not entitled to probate because of a failure of proof of due execution even though there was an attestation clause and one subscribing witness testified. In this case the purported codicil contains no attestation clause.

At the conclusion of the testimony, the following occurred:

"THE COURT: All right, is there anything further you wish to offer?

"MR. VAN SICKLE: No, Sir. I didn't have time to get the witness. I depended on the lawyers and they didn't come up with anything. Last night I hunted myself until 3 o'clock to find them. I come pretty pretty close to one of the ladies in Oklahoma, but that's as close as I got."

This falls far short of proof of unavailability of the witnesses or of diligence in attempting to procure their attendance.

The motion for continuance filed in September, 1970, by appellant makes no mention of the absence of witnesses.

Elnell v. Universalist General Convention, 76 Tex. 514, 13 S.W. 552, 554, 555, is the leading case on the subject of proof of wills by secondary evidence. The following rule was established by the Supreme Court in 1890: "When the subscribing witnesses fail to remember the facts necessary to probate a will, are dead, beyond the jurisdiction of the court, or are unwilling, from corrupt motives, to make the proof, any other legitimate evidence may be heard; and it has been decided that a will may be probated by evidence opposed to that of the subscribing witnesses. Hopf v. State, 72 Tex. 281, 10 S.W.Rep. 589. But the testimony of the subscribing witnesses, who had been called upon by the testator to attest the due execution of the will, is primary, and must be produced, or the absence of the witnesses accounted for, before other indirect testimony can be offered. When the subscribing witnesses have testified, or their absence properly accounted for, other evidence secondary in character is admissible. We do not intend to say that the evidence, exclusive of that objected to, was insufficient to probate the will, but merely that it was improper to resort to secondary evidence to establish the fact of its due execution as long as there was primary evidence of the fact accessible to the court, there being no cause shown for its non-production. Sample v. Irwin, 45 Tex. 567; White v. Holliday, 20 Tex. 679; Rev.St. art. 1847; 1 Grenl.Ev. § 518."

No evidence was offered with reference to the availability of subscribing witnesses. Secondary evidence was, therefore, incompetent, and the court properly refused to consider it.

See also Aschenbeck v. Aschenbeck, 62 S.W.2d 326 (Austin, Tex.Civ.App., 1933, dism.).

Although there are unsworn statements in the record by appellant with reference to his difficulty in locating witnesses, no evidence was offered on the point either at trial or on the motion for new trial.

Under the established rule, secondary evidence from Mrs. Thomas, appellant's sister, was incompetent to prove execution of the purported codicil.

Jones v. Steinle, 15 S.W.2d 164, supra, controls the instant case.

The purported will was signed by two attesting witnesses. One testified but the other "was not called, and no explanation was made for his absence."

Jones explicitly held that secondary evidence may not be used where all attesting witnesses do not testify and their absence is not accounted for. Numerous authorities in Texas and other states are cited in support of the proposition.

The case of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063 (1898), is probably the

most frequently cited decision on grounds for an instructed verdict. See also 56 Tex.Jur.2d, "Trial", § 214, pp. 554–555, in which the pertinent rule is stated as follows: "Where the plaintiff fails to adduce any evidence in proof of a fact essential to his right to recover, a verdict may be directed for the defendant. Although material facts may be established by the plaintiff inferentially, the court must direct a verdict for the defendant if the evidence is so slight as to raise a mere surmise or suspicion of the fact to be proved. A scintilla of evidence will not, therefore, prevent a direction of verdict for defendant."

If, under the authorities cited above, the appellant was not entitled to use secondary evidence to prove due execution of the will in the absence of testimony of attesting witnesses or evidence of their inability to attend trial, then there was no evidence whatsoever to support appellant's case.

If the rule with reference to secondary evidence is not applicable, there is no evidence in the record identifying the purported codicil as the document executed by the testatrix. Further there is no testimony relating to two of the subscribing witnesses. There is no testimony as to the identity or competency of said witnesses.

When a purported witness to the codicil, a Bessie Jones, was produced on hearing of appellant's motion for new trial, a serious question was raised by the evidence as to whether she was, in fact, Bessie Jones, since she appeared in court without any identification except a handwritten letter from an "uncle" stating that the bearer was "truly Bessie Jones."

The clarity of the memory of this witness with reference to execution of the purported codicil was exceptional. Yet she could not recall her own street address, the name of the aunt with whom she lived, the identity of any employer who had paid her by check, or her Social Security number. The witness had no driver's license and

had lost her Social Security number. She had no form of identification except the letter from her "uncle" above described. Under this record, any bearer of the letter would be "truly Bessie Jones."

■ In overruling appellant's points two through eight, we hold: (1) the appellant offered no evidence that the purported codicil was executed by Mrs. Manners and if so that she executed it with the formalities and under the circumstances required by law; (2) the secondary evidence offered by the appellant on the issue of the execution and attestation of the purported codicil was inadmissible because of his failure to produce or account for the absence of the witnesses to the purported codicil; and (3) in the absence of any competent evidence in support of the essential elements of his case a directed verdict against the appellant was proper.

The appellant's ninth point complains of error of the court in overruling his motion for new trial grounded on newly discovered evidence.

At the trial of the case and at the hearing of his motion for new trial the appellant offered no evidence on the question of his diligence in attempting to procure the attendance of the witnesses to the purported codicil.

The witness produced to testify at the hearing on appellant's motion for a new trial a few weeks later testified that she had lived at 621 Atlanta in Forth Worth for about a year before she moved to her present address. She had been in Oklahoma a few months. No evidence was offered relating to appellant's attempts or lack thereof to locate her prior to trial.

Appellant testified as to attempts to locate the witness, Willie May Johnson: "Well, last week I went out looking for her. What I can't understand, I don't guess nothing could have happened to her, she knows she is supposed to come to Court nor what, but I haven't been able to

get in touch with her. I don't know if something happened to her or what."

Appellant's sworn motion for new trial recites: "* * * the Witnesses: Willie May Johnson and Bessie Jones, have now been located; and will, upon a new trial in this cause, testify and corroborate the testimony of the witness, Mrs. Stella Thomas, * * *."

Appellant made no explanation of the absence of Willie May Johnson at the hearing on the motion for a new trial.

The testimony of "Bessie Jones" was not binding on the trial court and contradicted in several respects the trial testimony of Stella Thomas, who claimed to have seen the purported codicil executed.

No evidence was offered as to the efforts of appellant to locate this witness prior to trial. No diligence was shown.

In Conwill v. Gulf, C. & S. F. Ry. Co., 85 Tex. 96, 19 S.W. 1017 (1892), the Supreme Court held: "A new trial will not be granted on the ground of newly-discovered evidence, unless it is made to appear that it has come to the knowledge of the applicant since the trial; that it could not have been sooner discovered by the exercise of diligence; * * *."

New Amsterdam Casualty Company v. Jordan, 359 S.W.2d 864, 866 (Tex.Sup., 1962).

■ With reference to appellant's motion for a new trial, the trial court filed no findings of fact, and none were requested.

Under such circumstances, its decision must be affirmed if it can be upheld on any legal theory supported by the evidence. Seaman v. Seaman, 425 S.W.2d 339, 341 (Tex.Sup., 1968).

■ The presumption that the court found all controverted facts in support of its judgment applies to motions for new trial. Brawley v. Bowen, 387 S.W.2d 383, 384 (Tex.Sup., 1965).

■ It must, therefore, be presumed that the trial court found against appellant on the question of diligence.

All points of error are overruled. The judgment of the trial court is affirmed.